AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>iPhone (Purple)<br>Model: Apple iPhone 12<br>With no other identifying numbers or features | )<br>)<br>)<br>)<br>)<br>) |

**FILED**

**Jan 13 2023**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ carolinal          DEPUTY

Case No.   23-mj-08018-LR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Cristina Fuentes incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Cristina Fuentes
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ____01/13/2023____

_____
*Judge's signature*

City and state:  El Centro, California                    HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**               iPhone (White)
Model: Apple iPhone 12
With no other identifying numbers or features
Seized from Maria LOPEZ-Mejia
**(Target Device #1)**

FRONT                     BACK



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**

        iPhone (Purple)
        Model: Apple iPhone 12
        With no other identifying numbers or features
        Seized from Maria LOPEZ-Mejia
        **(Target Device #2)**

FRONT            BACK



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 8, 2022, up to and including December 8th, 2022, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Cristina Fuentes, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          iPhone (White)
                  Model: Apple Iphone 12
                  With no other identifying numbers or features
                  Seized from Maria LOPEZ-Mejia
                  **(Target Device #1)**

**A-2:**          iPhone (Purple)
                  Model: Apple iPhone 12
                  With no other identifying numbers or features
                  Seized from Maria LOPEZ-Mejia
                  **(Target Device #2)**

as further described in Attachments A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Edwin Irene UMANZAR-Chavez (UMANZAR) and Maria Dolores LOPEZ-Mejia (LOPEZ) for illegally transporting Oscar Celis MARTINEZ (MARTINEZ), Jesus Adrian RODRIGUEZ-Ochoa (RODRIGUEZ), and Sergio VILLALOBOS-Paredes (VILLALOBOS), (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California.  The Target Devices were seized from UMANZAR and LOPEZ on or about December 7, 2022, incident to their arrest. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

1

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

<strong>EXPERIENCE AND TRAINING</strong>

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since May 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 24-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.   The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.   Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio

files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a.   tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10.     On December 7, 2022, Border Patrol Agent (BPA) G. Larios was assigned to Zone 16 of the Calexico Border Patrol Station Area of Responsibility (CAX AOR).  BPA Larios was in a complete United States Border Patrol rough duty uniform with identifying patches and a visible name tag on his outer carrier vest.  Zone 16 of the CAX AOR is

approximately 12 miles east of the Calexico, California West Port of Entry and is mostly agricultural fields with private ranches throughout the Zone. The All-American Canal is located approximately 0.1 miles north of the International Boundary and is parallel to the International Boundary Fence.

11.     At approximately 12:30 p.m., the El Centro Sector Radio Dispatch (KAK 840) transmitted over the service radio that a concerned citizen had seen three individuals get into a dark colored sport- utility vehicle that was traveling west bound on State Route 98, passing Drop 4 of the All-American Canal. Following KAK 840's transmission, a Remote Video Surveillance System Operator (RVSS) spotted a vehicle matching the description traveling west bound on State Route 98. The RVSS Operator saw the vehicle go northbound on Bonds Corner Road and transmitted over the service radio the direction of travel of the suspected vehicle. BPA Larios identified the vehicle as a black GMC Acadia and caught up to it to obtain the vehicle license plate to determine if it was stolen. After BPA Larios transmitted the plate to the El Centro Sector Dispatch, it was transmitted that the vehicle was registered out of Rialto, California. Since the GMC matched the description of the SUV reported by the citizen and was visually confirmed by the RVSS Operator, BPA Larios activated his service vehicle's emergency lights and siren in order to conduct a vehicle stop. The GMC immediately pulled over to the side of Bonesteele Road and came to a complete stop.

12.     BPA Larios approached the GMC, identified himself to the driver, later identified as UMANZAR, as a United States Border Patrol Agent, questioned him as to his citizenship and asked if he possessed any documentation to be in or reside in the United States legally. UMANZAR claimed to be in the United States under asylum status with a work visa. BPA Larios also questioned the female passenger, later identified as LOPEZ, as to her citizenship and asked if she had any immigration documents to be in or reside in the United States legally. LOPEZ also claimed to be in the United States under asylum status with a work visa. At this time, BPA A. Gaytan arrived on scene and initiated a consensual conversation with LOPEZ. LOPEZ admitted to BPA Gaytan that they had travelled from

the Los Angeles area with the sole purpose of picking up illegal aliens to transport them further north.  LOPEZ also admitted that the only reason that they were picking up illegal aliens was for monetary gain, since the illegal aliens that they picked up during this encounter had no relation to her or her husband.

13.     While BPA Gaytan was talking to LOPEZ, BPA Larios asked UMANZAR to lower the back window.  BPA Larios saw two individuals sitting in the back seat and a third individual sitting in the third-row seat. All three individuals were in wet clothes. BPA Larios asked one of the individuals in the back seat, later identified as Oscar Celis MARTINEZ (MARTINEZ), if he had any documents to be in or reside in the United States legally. He claimed that he was in the process of getting a U-Visa, that he understood that he was not supposed to leave the United States, but due to a death in the family he had returned to Mexico and had just illegally crossed into the United States. BPA Larios questioned the other passenger in the back seat, later identified as Jesus Adrian RODRIGUEZ-Ochoa (RODRIGUEZ), if he had any documentation to be in or reside in the United States legally.  RODRIGUEZ stated that he did not have any documentation to be in or reside in the United States. BPA Larios then asked the passenger in the third-row seat, later identified as Sergio VILLALOBOS-Paredes (VILLALOBOS), if he had any documentation to be in or reside in the United States legally.  VILLALOBOS stated that he did not have any documentation to be in the United States legally and he had just crossed into the United States illegally. UMANZAR, LOPEZ, MARTINEZ, RODRIGUEZ and VILLALOBOS were all placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

14.     During a search incident to the arrest of LOPEZ, BPA Gaytan inquired about the two cellphones in LOPEZ's possession. LOPEZ claimed that the white iPhone (Target Device #1) with the clear cellphone case belonged to UMANZAR, and the purple iPhone (Target Device #2) with the black case belonged to her. The Target Devices were seized as evidence.

15.     Material Witness Oscar Celis MARTINEZ stated he is a citizen of Mexico. MARTINEZ stated he is not in possession of a document that would allow him to enter, work or remain in the United States.  MARTINEZ stated he made arrangements to be smuggled into the United States for $4,000 USD and was informed via cellphone that a smuggler in a GMC vehicle would pick them up. MARTINEZ stated that they were going to be taken to Yuma, Arizona and later he would be driven to San Bernadino, California. MARTINEZ was shown six-pack a photo lineup labeled A-2, which consisted of six individual photos. MARTINEZ identified picture number 6 in six-pack photo lineup A-2 as a female that looked very similar to the front passenger of the vehicle that picked him up in today's alien smuggling event. Picture number 6 in the six-pack photo lineup A-2, depicts LOPEZ.

16.     Material Witness Sergio VILLALOBOS-Paredes stated he is a citizen of Mexico. VILLALOBOS stated he is not in possession of a document that would allow him to enter, work or remain in the United States.  VILLALOBOS stated he made arrangements to be smuggled into the United States but does not know how much he was going to pay to be smuggled, and that his son made the arrangements. VILLALOBOS stated a male driver and a female passenger were in the vehicle that picked them up and he was not able to see the driver. VILLALOBOS was shown a six-pack photo lineup labeled A-1 but was not able to identify any of the pictures.  VILLALOBOS was also shown six-pack photo lineup labeled A-2, where he identified photo number 6 as the female passenger in the vehicle. Photo number 6 depicts LOPEZ.

17.     Material Witness Jesus Adrian RODRIGUEZ-Ochoa stated he is a citizen of Mexico. RODRIGUEZ stated he is not in possession of a document that would allow him to enter, work or remain in the United States.  RODRIGUEZ stated he made arrangements to be smuggled into the United States for $9,500 USD.   RODRIGUEZ stated that after crossing, he was instructed to wait for a black vehicle that would pick them up and, once inside, he noticed a male driver was driving the black vehicle. RODRIGUEZ identified the driver as photo number 2 from six-pack photo lineup labeled A-1. RODRIGUEZ also

7

stated that he noticed a female in the front passenger side of the black vehicle. RODRIGUEZ identified the female as photo number 6 from six-pack photo lineup labeled A-2.

18.     Based upon my experience and investigation in this case, I believe that UMANZAR, LOPEZ and other persons, as yet unknown, were involved in an alien smuggling venture and that UMANZAR and LOPEZ used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

19.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on November 8, 2022, up to and including December 8, 2022, the day after the arrest of UMANZAR and LOPEZ.

## METHODOLOGY

20.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

23.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that UMANZAR and LOPEZ used the Target Devices to facilitate the offense of alien smuggling. The Target Devices were likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by UMANZAR and LOPEZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Cristina Fuentes, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 13th day of January, 2023.

9:10 a.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A-1**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**            iPhone (White)
                 Model: Apple iPhone 12
                 With no other identifying numbers or features
                 Seized from Maria LOPEZ-Mejia
                 **(Target Device #1)**

FRONT                      BACK



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**

iPhone (Purple)
Model: Apple iPhone 12
With no other identifying numbers or features
Seized from Maria LOPEZ-Mejia
**(Target Device #2)**

FRONT                    BACK



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 8, 2022, up to and including December 8th, 2022, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.